# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOLAN JORDAN, | Case No. 1:20-cv-01658-ADA-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMEDATIONS REGARDING DEFENDANT'S |
| v. | EXHAUSTION MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION |
| ARCE, et al., | FOR DISCOVERY |
| Defendants. | (ECF Nos. 38, 41) |

Plaintiff Nolan Jordan is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant Arce's exhaustion motion for summary judgment, filed January 12, 2022.

## I.

## PROCEDURAL BACKGROUND

This action is proceeding against Defendant Arce[1] and three unidentified ICC members for deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment.[2]

Defendant Arce filed an answer on August 5, 2021.

On October 7, 2021, Magistrate Judge Barbara A. McAuliffe conducted a settlement conference, but the case did not settle.

---

[1] Erroneously sued as "Arcee."

[2] The unidentified ICC members have not yet been identified or served with process.

1    On October 12, 2021, the Court issued the discovery and scheduling order.

2    On January 12, 2022, Defendant Arce filed an exhaustion motion for summary judgment.

3    On January 27, 2022, Plaintiff filed an opposition, and Defendant filed a reply on
4    February 3, 2022.  On February 25, 2022, Plaintiff filed a surreply.

**II.**

**LEGAL STANDARD**

**A.       Statutory Exhaustion Requirement**

8    The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such
9    administrative remedies as are available" before commencing a suit challenging prison
10   conditions."   42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An
11   inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.").
12   Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies
13   persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there
14   are no 'remedies … available,' and the prisoner need not further pursue the grievance."  Brown
15   v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532
16   U.S. 731, 739 (2001)).

17   This statutory exhaustion requirement applies to all inmate suits about prison life, Porter
18   v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by
19   the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and
20   unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing
21   Porter, 534 U.S. at 524).

22   The failure to exhaust is an affirmative defense, and the defendants bear the burden of
23   raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca,  747 F.3d
24   1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of
25   the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at
26   1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they
27   are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the
28   light most favorable to the plaintiff, shows he failed to exhaust.  Id.

1   **B.      Summary Judgment Standard**

2      Any party may move for summary judgment, and the Court shall grant summary

3   judgment if the movant shows that there is no genuine dispute as to any material fact and the

4   movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks

5   omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir.

6   2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be

7   supported by (1) citing to particular parts of materials in the record, including but not limited to

8   depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not

9   establish the presence or absence of a genuine dispute or that the opposing party cannot produce

10  admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The

11  Court may consider other materials in the record not cited to by the parties, although it is not

12  required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237

13  F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017

14  (9th Cir. 2010).

15     The defendants bear the burden of proof in moving for summary judgment for failure to

16  exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available

17  administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.

18  If the defendants carry their burden, the burden of production shifts to the plaintiff "to come

19  forward with evidence showing that there is something in his particular case that made the

20  existing and generally available administrative remedies effectively unavailable to him." Id. "If

21  the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to

22  exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166.  However,

23  "[i]f material facts are disputed, summary judgment should be denied, and the district judge

24  rather than a jury should determine the facts." Id.

25                              **III.**

26                          **DISCUSSION**

27  **A.      Description of CDCR's Administrative Remedy Process**

28     Plaintiff is a state prisoner in the custody of the California Department of Corrections and

                                      3

Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014). Compliance with section 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA). Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b). The California Code of Regulations also requires the following:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, § 3084.2(a)(3).[3]

**B.   Summary of Allegations Underlying Plaintiff's Claims**

In June 2018, while Plaintiff was housed at California State Prison, Los Angeles County in Lancaster, he was classified as a "general population" inmate. Shortly after he was transferred to North Kern State Prison (NKSP) where he was assigned to a "non-designated" yard which was previously a "protected custody" yard. Plaintiff and twenty-five other general populations inmates were transferred from Lancaster to NKSP and assigned to the non-designated yard.

---

[3] Effective June 1, 2020, the new rules are set out in Cal. Code Regs. tit. 15, §§ 3480–3486. For purposes of these Findings and Recommendations, all citations refer to the 2018 version of the regulations which were effective at the time relevant to Plaintiff's claims.

1        All White and Black inmates who transferred from Lancaster went straight to the non-

2   designated yard.  Plaintiff and ten other Hispanic inmates were placed in the reception area C-1

3   and were trickled out to the non-designated.  However, as Hispanic inmates were sent to the non-

4   designated years violence began.  Plaintiff spent two days intending not to be one to initiate

5   violence, but he was forced to defend himself on two separate documented incidents.

6        The non-designated previously protective custody population have a mindset of attacking

7   general population inmates.  After the first incident in which Plaintiff was assaulted, he was sent

8   right back to the non-designated yard and assaulted a second time shortly thereafter.  After the

9   second incident, Plaintiff was sent to the reception area waiting to be rehoused.  Plaintiff was

10  placed in a locked stand-alone cage, and captain Arce told Plaintiff that if he went back to the

11  non-designated yard and got his fellow Hispanic inmates to "program positively" on the non-

12  designated yard for him he would transfer Plaintiff in six months to any desired location.  Arce

13  told Plaintiff if he didn't comply with the demand, he would see to it that Plaintiff's prison career

14  was ruined.  Plaintiff told Arce that he was not in a position to tell other inmates how to program

15  in prison and he was not interested in helping him.  Captain Arce got very angry and told

16  Plaintiff that he was "fucked" and his career in general population was over.  Arce further

17  advised Plaintiff that "he was going to make sure that [Plaintiff] would get beat if not stabbed

18  everywhere [he] went!"

19       Shortly after Plaintiff's conversation with Arce, Plaintiff was housed in the reception area

20  in the dorm on C-yard where he was assaulted by general population inmates in a two on one

21  assault.  While Plaintiff was being examined by medical staff, captain Arce and lieutenant Jamie

22  went to see Plaintiff and told him that "stuff like this would keep happening to me unless I took

23  them up on their non designated yard[,]" but Plaintiff refused.  Captain Arce told lieutenant

24  Jamie to lock up Plaintiff and he was placed in administrative segregation.  Plaintiff

25  subsequently received a California Department of Corrections and Rehabilitation (CDCR) Form

26  114-D (lock up order) which falsely stated that Plaintiff was requesting security housing unit

27  placement.

28

Plaintiff went to the Institutional Classification Committee (ICC) hearing to be released from administrative segregation and told them about captain Arce's threat and requested that the false Form 114-D be removed from his central file. The committee told Plaintiff if he had done as requested by captain Arce he would not have the problem and refused to remove the Form 114-D from his central file. The committee told Plaintiff he may as well go to the sensitive needs yard, but Plaintiff refused and asked to be removed to the general population.

Plaintiff was in administrative segregation for about a month and was then sent back to the general population reception yard. Captain Arce's "threat once again rang true" as Plaintiff was attacked by four inmates and required hospitalization. Because of the false 114-D, Plaintiff has been branded a sensitive needs yard inmate in the general population. Plaintiff lives in fear that he will be physically injured because the false 114-D remains in his central file.

### C.    Statement of Undisputed Facts[4]

1.    Defendant was a correctional officer at North Kern State Prison (NKSP) at the time of the events in Plaintiff's complaint, and the events about which Plaintiff complains alleged occurred there. (ECF No. 1; ECF No. 27.)

2.    The California Department of Corrections and Rehabilitation (CDCR) provides an administrative grievance process, which in 2018 contained three levels of review, for grieving issues that affect inmates. (Cal. Code Regs. tit. 15, div. 2, ch. 1, art. 8; Declaration of Oscar Magallanes (Magallanes Decl.) ¶¶ 3, 5, 6, 10, 11; Declaration of Howard E. Moseley (Moseley Decl.) ¶ 5.)

3.    The NKSP grievance office receives and reviews all non-healthcare grievances at the institutional level. (Magallanes Decl. ¶¶ 2-4.)

4.    CDCR and the NKSP Grievance Office use a computer program called the Inmate Appeals Tracking System (IATS) to electronically log and track inmate grievances and CDCR's response to them through all levels of review. (Magallanes Decl. ¶¶ 1, 15; Moseley Decl. ¶¶ 3, 4, 7.)

---

[4] Hereinafter referred to as "UF."

1    5.    All grievances received by NKSP's Appeals Office, even those that are rejected
2  or cancelled, are assigned log numbers, or at least tracked, for record-keeping purposes.
3  (Magallanes Decl. ¶¶ 4, 8, 9.)

4    6.    Between June 1, 2018, and November 9, 2020, Plaintiff submitted three inmate
5  grievances at NKSP concerning the allegations of the complaint.  (Magallanes Decl. ¶¶ 13, 14,
6  15, 20 & Exs. A-E.)

7    7.    In Appeal Log Number NKSP-D-18-02586, dated by Plaintiff June 30, 2018,
8  Plaintiff's first-level grievance complained about three assaults after his transfer to NKSP as a
9  level 1 inmate and an active "southsider" that participated in NKSP's non-designated yard, and
10 requested to drop his sensitive needs designation and to transfer to another institution.
11 (Magallanes Decl. ¶ 16 & Ex. B.)

12   8.    In grievance NKSP-D-18-02586, Plaintiff specifically complained that mixing
13 former general population and sensitive needs inmates, and his participation in the program,
14 "puts lives in danger and is greatly flawed and it has gotten [plaintiff] assaulted three times",
15 resulting in a couple of NKSP administrators "purposely put[ting] his life in danger".
16 (Magallanes Decl. ¶ 16 & Ex. B.)

17   9.    In grievance NKSP-D-18-02586, Plaintiff makes no mention about (1) Defendant
18 or any other specific correctional employee, or (2) any threat/communication or conduct in
19 retaliation for failing to assist with positive programming of other inmates; the grievance makes
20 no claim that a false assertion was made that he requested sensitive needs yard placement or that
21 a false Form 114-D was placed in Plaintiff's central file.  (Magallanes Decl. ¶ 16 & Ex. B.)

22   10.   On July 2, 2018, the Appeals Office rejected Plaintiff's appeal pursuant to
23 California Code of Regulations, title 15, section 3084.6(b)(14) because it was not submitted on
24 the departmentally approved form; more specifically, that Plaintiff completed the continuation
25 page on the wrong form and that the information from his white sheet of paper should be put
26 onto the CDCR 602A Attachment provided to him. Plaintiff resubmitted his grievance on July 6,
27 2018, which was again rejected on that date because he failed to attach supporting document.
28 (Magallanes Decl. ¶ 16 & Ex. B.)

11.     Plaintiff did not appeal the Appeals Office's rejection decision in Appeal Log Number NKSP-D-18-02586.  (Magallanes Decl. ¶ 16 & Ex. B; Moseley Decl. ¶¶ 7, 8, 9 & Ex. A.)

12.     In Appeal Log Number NKSP-D-18-02760, dated by Plaintiff July 15, 2018, Plaintiff's first-level grievance complained about three assaults after his transfer to NKSP's non-designated yard. (Magallanes Decl. ¶ 17 & Ex. C.)

13.     In grievance NKSP-D-18-02760, Plaintiff specifically complained the assaults were the result of mixing former general population and sensitive needs inmates and that he was trying to "positively program" on the non-designated yard. He contested the Rules Violation Reports against him regarding the June 28 and June 29, 2018 physical altercations.  (Magallanes Decl. ¶ 17 & Ex. C.)

14.     In grievance NKSP-D-18-02760, Plaintiff makes no mention about (1) Defendant or any other specific correctional employee, or (2) any threat/communication or conduct in retaliation for failing to assist with positive programming of other inmates; the grievance makes no claim that a false assertion was made that he requested sensitive needs yard placement or that a false Form 114-D was placed in Plaintiff's central file. (Magallanes Decl. ¶ 17 & Ex. C.)

15.     On July 16, 2018, the Appeal Office rejected Plaintiff's appeal pursuant to California Code of Regulations, title 15, section 3084.6(b)(8) because it involved multiple issues that did not derive from a single event, or were not directly related; i.e., attempting to appeal two separate Rules Violation Reports.  (Magallanes Decl. ¶ 17 & Ex. C.)

16.     In Appeal Log Number NKSP-D-18-03073, dated by Plaintiff August 1, 2018, Plaintiff's second-level appeal concerned Rules Violation Report (RVR) Log #5204043 against him dated June 28, 2018, for the specific act of "battery on a prisoner". Plaintiff requested that the RVR be dismissed and his lost credits restored, and that the CDCR 7219s related to the incident reflect that no battery occurred. Plaintiff's claim was that he was inappropriately found guilty of the charge, and that there was no fight or physical altercation, just a loud misunderstanding. (Magallanes Decl. ¶ 18 & Ex. D.)

17.   While Plaintiff's grievance NKSP-D-18-03073 claimed the incident was the direct result of general population inmates and sensitive needs inmates being housed together, as with his other appeals he makes no mention of Defendant (or any other particular corrections personnel), or any threat/communication or conduct in retaliation for failing to assist with the positive programming of other inmates; the grievance makes no claim that a false assertion was made that he requested sensitive needs yard placement or that a false Form 114-D was placed in Plaintiff's central file.  (Magallanes Decl. ¶ 18 & Ex. D.)

18.   On August 3, 2018, the Appeals Office partially granted the second-level appeal in that a review of the CDCR 7219s related to the incident was conducted, and denied in that Plaintiff's RVR was not dismissed and his lost credits were not restored. Plaintiff was advised that the issue may be submitted for a Director's level of review, if he so desired.  (Magallanes Decl. ¶ 18 & Ex. D; Moseley Decl. ¶¶ 7, 8 and 9 & Ex. A.)

19.   In Appeal Log Number NKSP-D-18-03432, dated by Plaintiff August 28, 2018, Plaintiff's first-level appeal complained (1) that he was beaten up and assaulted four times because of his compliance with CDCR non-designated yard policy (that he was previously designated general population but had to designate sensitive needs yard to assure his safety), (2) that he witnessed staff looking up inmates in SOMS for inmates to "clean house"; and requested (1) a transfer, and (2) that his sensitive needs yard chronos be removed from his file. (Magallanes Decl. ¶ 19 & Ex. E.)

20.   In grievance NKSP-D-18-03432, Plaintiff makes no mention about (1) Defendant or any other specific correctional employee, or (2) any threat/communication or conduct in retaliation for failing to assist with positive programming of other inmates; the grievance makes no claim that a false assertion was made that he requested sensitive needs yard placement or that a false Form 114-D was placed in Plaintiff's central file.  (Magallanes Decl. ¶ 19 & Ex. E.)

21.   On August 31, 2018, the Appeal Office rejected Plaintiff's appeal pursuant to California Code of Regulations, title 15, section 3084.6(b)(8) because it involved multiple issues that did not derive from a single event, or were not directly related. The Appeals Office advised Plaintiff to resubmit new appeals separating the transfer appeal issue, request to remove sensitive

needs chronos, and staff looking up inmates in SOMS – and to note how he knows about staff looking up inmates to "clean house", when it happened, and to identify the officers.  (Magallanes Decl. ¶ 19 & Ex. E.)

22.     Plaintiff did not submit new or other appeals relating to grievance NKSP-D-18-03432.

(Magallanes Decl. ⍴ 20 & Ex. A; Moseley Decl. ⍴⍴ 7, 8, 9 & Ex. A.)

23.     Plaintiff did not submit any other appeals to NKSP, related or unrelated to the allegations in his Complaint, during the relevant time frame of this lawsuit; from Plaintiff's transfer to NKSP in June 2018 to the filing of Plaintiff's Complaint on November 9, 2020. (Magallanes Decl. ⍴ 20 & Ex. A.)

24.     Decisions by the CDCR Office of Appeals (OOA) represent the final level of review in the Department's grievance process and are rendered on behalf of the Secretary of the Department. (Magallanes Decl. ⍴ 20 & Ex. A.)

25.     In Appeal Log No. 1811983 (an appeal of Grievance Log No. NKSP-18-03073), Plaintiff's third-level appeal alleged that the Senior Hearing Officer inappropriately found Plaintiff guilty of Battery on a Prisoner on June 28, 2018 (Rules Violation Report Log No. 520403). Plaintiff asserted that no battery or physical altercation took place, just a loud misunderstanding that was a direct result of sensitive needs yard inmates and general population inmates being housed together as a result of Departmental policy. Plaintiff also alleged that Plaintiff was not expected to be on that yard because Plaintiff was a general population inmate and an active STG II "southsider," but that Plaintiff intended to program positively and was taken off the yard at the first opportunity.  (Moseley Decl. ¶¶ 7, 8 & Ex. B.)

26.     In Appeal Log No. 1811983, Plaintiff requested that the medical reports related to the incident (the CDC Form 7219s) be reviewed because they would demonstrate that no battery occurred. Plaintiff also requested that the rules violation be dismissed and Plaintiff's credit loss be restored.  (Moseley Decl. ¶ 8 & Ex. B.)

27.     Nowhere in Appeal Log No. 1811983 does Plaintiff name Defendant or allege any threat, communication, or conduct by Defendant in retaliation for failing to assist with the

1  positive programming of other inmates; the grievance makes no claim that a false assertion was

2  made that he requested sensitive needs yard placement or that a false Form 114-D was placed in

3  Plaintiff's central file. (Moseley Decl. ¶ 8 & Ex. B.)

4        29.    On November 28, 2018, Appeal Log No. 1811983 was denied by the third-level

5  reviewer on the grounds that no good cause existed to modify the finding or disposition of the

6  rules violation; Plaintiff has no other third level appeal. (Moseley Decl. ¶¶ 7, 8 & Exs. A and B.)

7        **D.**    **Plaintiff's Surreply**

8        Plaintiff filed an unauthorized surreply on February 25, 2022.

9        Neither the Federal Rules of Civil Procedure, nor the Local Rules for the Eastern District

10 of California permit the filing of a surreply as a matter of right. See Garcia v. Biter, 195

11 F.Supp.3d at 1131 (E.D. Ca. July 18, 2016) (noting the plaintiff did not have a right to file

12 a surreply under the local rules or under the Federal Rules of Civil Procedure).  However, district

13 courts have discretion to permit, or preclude, a surreply. Id. at 1133 (other citations omitted).

14 While courts are required to provide pro se litigants leniency, the Court generally views motions

15 for leave to file a surreply with disfavor and will not consider granting a motion seeking leave to

16 file a surreply absent good cause shown. Id. (other citations omitted).  Although Plaintiff does

17 not have a right to file a surreply and did not seek leave to do so, the Court will exercise its

18 discretion and consider the surreply in ruling on the instant motion for summary judgment.

19       **E.**    **Request for Discovery**

20       In his opposition, Plaintiff "requests from my C.D.C.R 'C-file' all C.D.C.R. – 128's

21 (including classification chronos), C.D.C.R. – 7219's (medical reports), C.D.C.R. – 114-D's

22 (lockup orders0, C.D.C.R. – 602's (inmate appeals), as well as all incidents reports from M-

23 facility, B-facility & C-facility at North Kern State Prison, from my arrival to transfer.   All

24 Reports and Chronos requested are from 6-7-18 my arrival at N.K.S.P. up until my transfer from

25 N.K.S.P." (ECF No. 41 at 3.)

26       Federal Rule of Civil Procedure 56(d) permits a party opposing a motion for summary

27 judgment to request an order deferring the time to respond to the motion and permitting that

28 party to conduct additional discovery upon an adequate factual showing. Rule 56(d) provides that

the party must "show[ ] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). "A party requesting a continuance pursuant to [Rule 56(d) ] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." Tatum v. City & Cty. of San Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006) (citations omitted).

"Though the conduct of discovery is generally left to a district court's discretion, summary judgment is disfavored where relevant evidence remains to be discovered, particularly in cases involving confined *pro se* plaintiffs." Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir. 1988). Thus, summary judgment in the face of requests for additional discovery is appropriate only where such discovery would be "fruitless" with respect to the proof of a viable claim. Jones v. Blanas, 393 F.3d 918, 930 (9th Cir. 2004). "The burden is on the nonmoving party, however, to show what material facts would be discovered that would preclude summary judgment." Klingele, 849 F.2d at 412; see also Conkle v. Jeong, 73 F.3d 909, 914 (9th Cir. 1995) ("The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists."). Moreover, " '[t]he district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past.' " Conkle, 73 F.3d at 914 (quoting California Union Ins. Co. v. American Diversified Sav. Bank, 914 F.2d 1271, 1278 (9th Cir. 1990)).

Plaintiff fails to make the showing required under Rule 56(d). It is unclear whether plaintiff is claiming that he requires further discovery to oppose the pending summary judgment related to administrative exhaustion or whether he requires discovery regarding the merits of this case. Plaintiff's request to stay discovery does not show the specific reasons Plaintiff cannot present essential facts nor does it identify the specific facts further discovery would reveal. Accordingly, Plaintiff's request to stay discovery contained in his opposition should be denied for failing to comply with Rule 56(d).

## F.   Analysis of Defendant's Motion

Defendants argue that Plaintiff failed to properly complete the administrative appeal process as to any of his claims against Defendant for deliberate indifference prior to filing suit.

1    As stated in the Court's February 3, 2021, screening order, this action is proceeding on

2  Plaintiff's claim that Defendant Arce falsely accused Plaintiff "of requesting sensitive needs yard

3  and placing a Form 114-D in his central file, in order to 'purposely cause harm[.]'"  (ECF No. 15

4  at 5.)

5    Defendant has shown, and Plaintiff does not dispute, that there was a process in place to

6  exhaust his administrative remedies.  (UF 2-6.)

7    It is undisputed that the California Department of Corrections and Rehabilitation (CDCR)

8  provides an administrative grievance process, which in 2018 contained three levels of review, for

9  grieving issues that affect inmates.  (UF 2.)  The NKSP grievance office receives and reviews all

10  non-healthcare grievances at the institutional level.  (UF 3.)  CDCR and the NKSP Grievance

11  Office use a computer program called the Inmate Appeals Tracking System (IATS) to

12  electronically log and track inmate grievances and CDCR's response to them through all levels

13  of review.  (UF 4.)  All grievances received by NKSP's Appeals Office, even those that are

14  rejected or cancelled, are assigned log numbers, or at least tracked, for record-keeping purposes.

15  (UF 5.)  Between June 1, 2018, and November 9, 2020, Plaintiff submitted three inmate

16  grievances at NKSP concerning the allegations of the complaint.  (UF 6.)

17    1.    Appeal No. NKSP-D-18-02586

18    In appeal log number NKSP-D-18-02586, self-dated June 30, 2018, Plaintiff complained

19  about three separate inmate assaults after his transfer to NSKP as a level 1 inmate and active

20  "southsider."  Plaintiff was a participate in NKSP's non-designated yard and requested to drop

21  his sensitive needs designation to transfer to a different institution.  (UF 7.)  More specifically,

22  Plaintiff claimed that mixing former general population and sensitive needs inmates, and his

23  participation in the program, "puts lives in danger and is greatly flawed and it has gotten

24  [plaintiff] assaulted three times", and a couple of NKSP administrators "purposely put his life in

25  danger."  (UF 9.)

26    Defendant argues this appeal did not identify him or grieve any of the deliberate

27  indifference claims at issue in this action.  The Court agrees.  Although Plaintiff complains about

28  his placement and housing in a non-designated yard, he fails to identity or name Defendant Arce

1   or set forth any misconduct on his part, namely, that Arce threatened Plaintiff in retaliation for

2   failing to assist with positive programming of other inmates.   Nor does the appeal allege that

3   Plaintiff falsely requested sensitive needs yard placement or that a false Form 114-D was placed

4   in his central file.   (UF 10.)   Accordingly, this appeal does not satisfy the exhaustion

5   requirement.  See Woodford v. Ngo, 548 U.S. at 90-91; see also Estrada v. California Corr. Inst.,

6   No. 1:18-cv-00599-AWI-SAB (PC), 2021 WL 3268555, at *8 (E.D. Cal. July 30, 2021) adopted

7   by, 2021 WL 4123686 (E.D. Cal. Sept. 9, 2021) (finding the plaintiff failed to properly exhaust

8   his administrative remedies because he did not name the defendant or specifically describe his

9   alleged wrongdoing as required by CDCR's regulations).

10          Furthermore, the appeal was rejected at the first level of review on July 2, 2018, because

11   it was not submitted on the department approved appeal form pursuant to California Code of

12   Regulations, title 15, section 3084.6(b)(14).   (UF 10.)   It was specifically noted that Plaintiff

13   completed the continuation page on the wrong form and that the information from his white

14   sheet of paper should be put onto the CDCR 602A Attachment provided to him. (Id.)  Plaintiff

15   resubmitted his grievance on July 6, 2018, which was again rejected because he failed to attach

16   supporting documentation pursuant to California Code of Regulations, title 15, section

17   3084.6(b)(7).[5]   (Id.)   These screen outs were proper under the applicable California Code of

18   Regulations.  See, e.g., Jamison v. Palgummi, No. 2:13-cv-1705 AC P, 2014 WL 5781225, at *7

19   (E.D. Cal. Nov. 5, 2014) (noting that inmate appeal may be rejected if submitted on the

20   departmentally approved appeal form); see also Morris v. Daly, No. 2:12-cv-2845 JAM AC P,

21   2016 WL 796656, at *9 (E.D. Cal. Mar. 1, 2016) (noting that inmate appeal may be rejected if

22   missing necessary supporting documents).   Plaintiff did not appeal the Appeal Office's rejection.

23   (UF 11.)

24   ///

25   ///

26   ///

---

[5] It was specifically noted that Plaintiff wished to be transferred to a Level I facility and have his SNY suffix removed, but failed to submit any supporting documentation identifying that he had a current SNY suffix. (Magallanes Decl. Ex B.)

2.      Appeal No. NKSP-D-18-02760

In appeal log number NKSP-D-18-02760, self-dated July 15, 2018, Plaintiff alleged:

> I am a level 1 inmate that has positively program[m]ed on M.S.E. facilities for 2 years.  I am now sitting in Ad-Seg after having been assaulted 3 times due to having taken part in the mixing of G.P. inmates and S.N.Y. inmates.  I've had only 1 R.V.R. in the past 2 years for possessing danger contraband (cell phone).  Now because of this dangerous policy of mixing G.P. and S.N.Y. inmates I have 2 R.V.R's for fighting.  The first is for being removed by an S.N.Y. for being a G.P. inmate (active Southsider) after I had spent over 72 hours (meaning I was gonna stay & program).  The second was for fighting as well.  But I was clearly a victim of a 2 on 1 removal for having spent over 72 hours on the new M.S.F. program.  The injuries on myself and the others involved clearly show I was the victim.  All 3 documented assaults on me were because I went to positively program on the new C.D.C. policy of mixing G.P. & S.N.Y. inmates (w[h]ich is a forced policy) .  I have been assaulted 3x's and I have 2 serious R.V.R.'s for actively having a roll in positively program[m]ing in this new C.D.C. policy.  The only relief I've been offered is to go SNY but that'll keep me in the same dangerous circumstance just vice versa.

(Magallanes Decl. Ex. C; UF 13.)

It is clear that this appeal does identity or name Defendant Arce or set forth any misconduct on his part, namely, that Arce threatened Plaintiff in retaliation for failing to assist with positive programming of other inmates.  (UF 14.)  Nor does the appeal allege that Plaintiff falsely requested sensitive needs yard placement or that a false Form 114-D was placed in his central file.  (Id.)

Furthermore, on July 16, 2018, the appeal was rejected at the first level of review pursuant to California Code of Regulations, title 15, section 3084.6(b)(8) because it involved multiple issues that did not derive from a single evidence, or were not directly related; i.e., attempting to appeal two separate Rule Violation Reports.  (UF 15.)

3.      Appeal No. NKSP-D-18-03073

In appeal log number NKSP-D-18-03073, self-dated August 1, 2018, Plaintiff challenged the Rules Violation Report against him for "battery on a prisoner."  (UF 17.)  Plaintiff requested that the Rules Violation report be dismissed and his lost credits restored, and that the CDCR 7219s related to the incident reflect that no battery occurred.  (Id.)  Although Plaintiff claimed

that the incident was the direct result of general population inmates and sensitive needs inmates being housed together, as with the other appeals he makes no mention of Defendant, or any threat/communication or conduct in retaliation for failing to assist with the positive programming of other inmates; the grievance makes no claim that a false assertion was made that he requested sensitive needs yard placement or that a false Form 1140D was placed in Plaintiff's central file. (UF 17.)

On August 3, 2018, the appeal was partially granted at the second level in that a review of the CDCR 7219s related to the incident was conducted, and denied with respect to Plaintiff's Rules Violation Report being dismissed and his credit was not restored. (UF 18.) Plaintiff was advised that he could appeal the decision to the Director's level review. (Magallanes Decl. Ex. D.)

4.    Appeal No. 1811983 (Appeal of No. NKSP-18-03073)

In appeal log number 1811983 (the third-level appeal of grievance log no. NKSP-18-03073), Plaintiff alleged:

> I was found guilty of this R.V.R. on 7-23-18. I am appealing it because no battery took place. As in evidence of both mine and Cervantes' C.D.C.R. 7219s clearly show. There are no offensive or defensive wounds, scratches, bruises, swollen, discolored or even reddened areas on either of us. My hands were free of all such injuries as well as Cervantes' arms and back that were supposed to have been struck multiple times by me. The C.D.C.R. 7219s were filled out minutes after the incident & both of us were check multiple times (4 x's) within at least 30 minutes. There was just a loud misunderstanding at the microwave oven. Food was thrown on the ground and table. But no punches thrown. All this is due to the integration of general population inmates & S.N.Y. inmates. I was not expected to program on that yard by the staff or the inmates presently there (S.N.Y.'s) because I am G.P. & an active STG II Southsider. But my true intent was to positively program on that yard as shown by my presen[ce] still being there after 72 hours. I feel that the first opportunity to have me taken off the yard has been used in this case. I have even elected to once again be placed in another non[-]designated program facility. I'm truly trying to program positively.

(Moseley Decl. Ex. B; UF 25.) Plaintiff requested that the medical reports related to the incident (the CDC Form 7219s) be reviewed because they would demonstrate that no battery occurred.

Plaintiff also requested that the rules violation be dismissed and Plaintiff's credit loss be restored.  (UF 26.)  The appeal was received by the OOA on August 16, 2018, and denied on November 28, 2018, determining no good cause existed to modify the finding or disposition of the rules violation.  (UF 29.)  This appeal does not name Defendant or allege any threat, communication, or conduct by Defendant in retaliation for failing to assist with the positive programming of other inmates; the grievance makes no claim that a false assertion was made that he requested sensitive needs yard placement or that a false Form 114-D was placed in Plaintiff's central file. (UF 27.)

5.     Appeal No. NKSP-D-18-03432

In appeal log number NKSP-D-18-03432, self-dated August 28, 2018, Plaintiff alleged that he had been beat up and assaulted four times because he complied with the CDCR non-designated yard policy (that he was previously designated general population but had to designate sensitive needs yard to assure his safety).  (UF 19.)  Plaintiff also claimed that he observed staff members look up inmates on SOMS to "clean house."  (Id.)  Plaintiff requested a transfer and that his sensitive needs yard chronos be removed from his file.  (Id.)  On August 31, 2018, the Appeal Office rejected Plaintiff's appeal pursuant to California Code of Regulations, title 15, section 3084.6(b)(8) because it involved multiple issues that did not derive from a single event, or were not directly related. The Appeals Office advised Plaintiff to resubmit new appeals separating the transfer appeal issue, request to remove sensitive needs chronos, and staff looking up inmates in SOMS – and to note how he knows about staff looking up inmates to "clean house", when it happened, and to identify the officers.  (UF 21.)  Plaintiff did not submit new or other appeals relating to grievance NKSP-D-18-03432. (UF 22.)

In this appeal, Plaintiff makes no mention about (1) Defendant or any other specific correctional employee, or (2) any threat/communication or conduct in retaliation for failing to assist with positive programming of other inmates; the grievance makes no claim that a false assertion was made that he requested sensitive needs yard placement or that a false Form 114-D was placed in Plaintiff's central file.  (UF 20.)

///

1        6.      Plaintiff's Opposition

2        Defendant has submitted evidence that Plaintiff did not submit any other appeals to

3    NKSP, related or unrelated to the allegations in his Complaint, during the relevant time frame of

4    this lawsuit; from Plaintiff's transfer to NKSP in June 2018 to the filing of Plaintiff's Complaint

5    on November 9, 2020.  (Magallanes Decl. ⁋ 20 & Ex. A.)  Therefore, Defendant has met his

6    burden to show that Plaintiff failed to exhaust administrative remedies available to him.  Upon

7    this showing by Defendant, the burden shifts to Plaintiff to come forward with evidence showing

8    that something in his case made the existing administrative remedies effectively unavailable to

9    him. See Albino, 747 F.3d at 1172.

10       In opposition, Plaintiff contends that appeal no. NKSP-D-18-03432 exhausts his

11   deliberate indifference claims against Defendant Arce.  (ECF No. 42 at 3.)  The Court does not

12   agree for the reasons explained above.  In appeal no. NKSP-D-18-03432, Plaintiff makes no

13   mention about (1) Defendant or any other specific correctional employee, or (2) any

14   threat/communication or conduct in retaliation for failing to assist with positive programming of

15   other inmates; the grievance makes no claim that a false assertion was made that he requested

16   sensitive needs yard placement or that a false Form 114-D was placed in Plaintiff's central file.

17   (UF 20.)

18       Plaintiff further contends that Defendant used his position, title, and rank (1) to try to

19   coerce Plaintiff into doing his bidding (assist in the "positive programming" of Hispanic

20   inmates), (2) to threaten Plaintiff (if he did not assist in the "positive programming" of

21   Hispanics), and then (3) to have Plaintiff assaulted (as a result of the alleged false sensitive needs

22   yard designation) to confirm the threat.  (ECF No. 41 at 2.)  However, as stated above, none of

23   Plaintiff's grievances make any mention of (1) Defendant or any other specific correctional

24   employee, or (2) any threat/ communication or conduct in retaliation for failing to assist with

25   positive programming of other inmates; the grievances make no claim that a false assertion was

26   made that he requested sensitive needs yard placement or that a false Form 114-D was placed in

27   Plaintiff's central file.  In addition, appeal log numbers NKSP-D-18-02586 and NKSP-D-18-

28

1   02760 were properly rejected as procedurally deficient.  (Magallanes Decl. ¶¶ 16-17, Exs. B &
2   C.)

3          Lastly, Plaintiff contends that he wrote a grievance that specifically mentioned Defendant
4   but it was returned for deficiencies and ultimately "disappeared" or was lost.  (ECF No. 41 at 3;
5   ECF No. 42 at 3.)    Defendant argues that Plaintiff's bald allegation that he filed a grievance
6   which subsequently "disappeared" or was lost does not change the fact that the generally
7   available administrative remedies were available to him when he filed suit, and Plaintiff could
8   have followed up on his missing or lost grievance, but chose not to do so.  The Court agrees.

9          Although Plaintiff asserts that he submitted a grievance that was lost or disappeared, he
10  offers no details as to the exact content of the grievance, to whom the request was made, when
11  the request was made, or whether he followed up on the request (*e.g.*, Plaintiff did not file any
12  grievance or document asking what happened to his grievance that "disappeared" or was lost).
13  Plaintiff's bald and conclusory assertion that he submitted a "grievance" that disappeared does
14  not overcome Defendant's evidence that he failed to submit a grievance regarding the claims at
15  issue in this action. Cf. Dennis v. Castrillo, No. 2:19-cv-00828-JAM-JDP (PC), 2021 WL
16  5165219, at *4 (E.D. Cal. Nov. 5, 2021) ("In the absence of something more than bare
17  allegations, plaintiff cannot be found to have created a genuine dispute of fact over whether the
18  grievance system was unavailable to him."); see also F.T.C. v. Publ'g Clearing House, Inc., 104
19  F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and
20  any supporting evidence, is insufficient to create a genuine issue of material fact." (citations
21  omitted)); Jackson v. Baca, No. 12-cv-10393 JLS, 2018 WL 1916307, at *6 * (C.D. Cal. Feb. 13,
22  2018 (" '[V]ague assertion[s]' that prison officials did not process an inmate's appeals, or
23  'stopp[ed] them from being processed,' are insufficient to create a genuine factual dispute
24  regarding the availability of a remedy." (alterations in original) (collecting cases)).  This is so
25  because if a prisoner could simply declare that a unspecified grievance was lost or disappeared,
26  without providing any supporting facts or evidence, any prisoner could avoid exhausting
27  administrative remedies by simply making such bald statements.  See, e.g., Draper v. Rosario,
28  836 F.3d 1072, 1080 (9th Cir. 2016) (the Ninth Circuit dismissed the prisoner's "unsupported

1    allegations" that prison officials "prohibited and impeded" efforts to exhaust because such

2    allegations were "insufficient to create a triable issue of material fact," and the prisoner failed to

3    rebut evidence of non-exhaustion); see also Millner v. Biter, No. 1:13-cv-02029-AWI-SAB (PC),

4    2017 WL 735688 (E.D. Cal. Feb. 24, 2017) (remedies remained available where inmate failed to

5    show he "took all reasonable and appropriate steps in presenting the grievance in a timely

6    manner, or that any officials' failure to respond to it occurred not through his own fault, and there

7    was no evidence that prison official engaged in any misconduct regarding plaintiff's ability to

8    exhaust administrative remedies.")  Accordingly, Defendant has met his burden of showing that

9    administrative remedies were available and that Plaintiff did not exhaust them with respect to

10   claims at issue in this action and the motion for summary judgment should be granted.

11           7.      Dismissal of Unidentified Doe Defendants Pursuant Rule 4 (m)

12           Plaintiff's claims against the unidentified Doe Defendants remains.  Although "the use of

13   'John Doe' to identify a defendant is not favored," Gillespie v. Civiletti, 629 F.2d 637, 642 (9th

14   Cir. 1980), "where the identity of the alleged defendant is not known prior to the filing of a

15   complaint, the plaintiff should be given the opportunity through discovery to identify the

16   unknown defendants, unless it is clear that discovery would not uncover the identities, or that the

17   complaint would be dismissed on other grounds," Wakefield v. Thompson, 177 F.3d 1160, 1163

18   (9th Cir. 1999).

19           Here, the Court accorded Plaintiff this opportunity in its April 2021 service order,

20   explaining that the three unidentified ICC members could not be served before being identified

21   and noting that Plaintiff could move to substitute the named Defendants once their identity was

22   ascertained.  (ECF No. 21 at n.1.)  The October 12, 2021 scheduling order provided that the

23   parties could amend the pleading on or before April 12, 2022, and the discovery deadline was set

24   for June 12, 2022.  (ECF No. 36.)  Plaintiff has not moved to amend his complaint, moved to

25   substitute the Doe Defendants, or otherwise notified the Court of the identity of Doe Defendants.

26           Pursuant to Rule 4 of the Federal Rules of Civil Procedure, "[i]f a defendant is not served

27   within 90 days after the complaint is filed, the court—on motion or on its own after notice to the

28   plaintiff—must dismiss the action without prejudice against that defendant or order that service

be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). This 90-day deadline under Rule 4(m) applies to service on unnamed defendants. See Bulgara v. Cty. of Stanislaus, No. 1:18-cv-00804-DAD-SAB, 2020 WL 5366306, at *5 (E.D. Cal. Sept. 8, 2020), report and recommendation adopted, No. 1:18-cv-00804-DAD-SAB (PS), 2021 WL 1105255 (E.D. Cal. Mar. 23, 2021) (dismissing action against "Doe defendants" for failure to serve within Rule 4(m)'s 90-day deadline). In this case, well over 90 days have elapsed since the filing of Plaintiff's complaint on November 9, 2020.   Plaintiff has therefore failed to serve the Defendant Does in compliance with Rule 4(m).

In addition to Rule 4(m)'s requirements, "a court may dismiss a defendant, a claim[,] or an action based on a party's failure to prosecute an action[,] failure to obey a court order, or failure to comply with local rules." Bulgara, 2020 WL 5366306, at *5 (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint), Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for failure to prosecute and to comply with local rules)).   Plaintiff received advisement that he was required to amend his complaint to identify the Doe Defendants so that the complaint could be served. (ECF No. 21.)  Discovery has closed and the deadline to amend the pleadings has passed without Plaintiff filing anything to indicate that he has identified the Doe Defendants.

Where Plaintiff has failed to effect service in accordance with Rule 4(m) and has failed to comply with the orders instructing him to identify the defendant before the close of discovery, dismissal of the Doe Defendants is warranted. See Williby v. California, 276 F. App'x 663, 665 (9th Cir. 2008) (holding district court's sua sponte dismissal of Doe defendants was merited where plaintiff had failed to identify defendants within allotted discovery period); Bulgara, 2020 WL 5366306, at *5 (recommending dismissal of Doe defendants, without additional notice, for failure to effect service under Rule 4(m) where defendants were not

identified within the allotted discovery period). Accordingly, the Doe Defendants should be dismissed from this action.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.  Plaintiff's motion for discovery (ECF No. 41) be DENIED; and

2.  Defendant's exhaustion motion for summary judgment (ECF No. 38) be granted;

3.  The Doe Defendants be dismissed from the action for failure to serve process pursuant to Federal Rule of Civil Procedure 4(m); and

4.  The instant action be dismissed, without prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 2, 2022**

UNITED STATES MAGISTRATE JUDGE